**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ELIZABETH ROSALIE ADAMS,**

        **Plaintiff,**

**-vs-**                               **Case No. 6:13-cv-1599-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, disability insurance benefits on October 5, 2010, alleging disability on February 1, 2005, due to fibromyalgia, diabetes mellitus, carpal tunnel syndrome, depression, methicillin-resistant Staphylococcus aueas (MRSA), thyroid problems, and back pain. R. 132, 162. Her application was denied initially and upon reconsideration. R. 75-80.

Plaintiff requested a hearing, which was held on October 6, 2011, before Administrative Law Judge Joseph L. Brinkley (hereinafter referred to as "ALJ"). R. 31. In a decision dated January 12, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-22. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on August 22, 2013. R. 1. Plaintiff filed this action for judicial review on October 16, 2013. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was 51 years old with a high school education, some college, and past relevant work as an office worker and a notary. 56, 59, 158, 163. Plaintiff's date last insured was March 31, 2009. R. 136.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of chronic sinusitis, gastroparesis, thyroid problems, diabetes, carpal tunnel syndrome, back problems, fibromyalgia, and depression. R. 33, 39, 42-53, 147, 158, 162. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that, through the date last insured, Plaintiff suffered from diabetes, degenerative disc disease, headaches, chronic sinusitis, asthma, obesity, hypertension, irritable bowel syndrome, fibromyalgia, arthritis, depression and anxiety, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14-15. The ALJ determined that, through the date of last insured, Plaintiff retained the residual functional capacity (RFC) to perform light work, however, she could: never climb ladders, ropes, and scaffolds; frequently climb stairs, balance, stoop, and use the hands bilaterally for grasping/fingering/fine manipulation of objects; occasionally reach overhead; must avoid concentrated exposure to hazards including dangerous machinery and unprotected heights; must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, dusts, fumes, gases,

odors, etc.; and was limited to simple 1-2 step tasks and low stress, *i.e.*, no assembly lines or production quotas. R. 17. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 20. Considering Plaintiff's vocational profile and RFC through the date of last insured, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, during the relevant time period, Plaintiff could perform other work existing in significant numbers in the national economy as cashier II, mail sorter/clerk/ and food counter server. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, through March 31, 2009, the date of last insured. R. 20-21.

Plaintiff now asserts four points of error. First, she argues that the ALJ erred in the rationale for minimizing the weight he gave to the opinion of Dr. Shell, Plaintiff's treating psychologist since 2004. Second, she claims the ALJ erred by failing to account in his mental RFC finding for the ALJ's own finding that Plaintiff experienced moderate limitations of concentration, persistence, or pace. Third, Plaintiff contends the ALJ erred by relying on the testimony of the vocational witness, who provided "reasoning level 2 and 3" jobs in response to a hypothetical limiting Plaintiff to 1-2 step tasks, the equivalent of "reasoning level 1" jobs. Fourth, she asserts that the ALJ erred in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### *A. Moderate limitations in concentration, persistence and pace*

Plaintiff contends the ALJ committed reversible error in finding that she had moderate difficulties sustaining concentration, persistence, or pace, but not assigning these limitations in Plaintiff's mental RFC, instead including in the hypothetical a limitation to "simple 1-2 step tasks and low stress, *i.e.*, no assembly lines or productions quotas." Plaintiff argues the limitation to simple tasks or low stress work does not, implicitly or explicitly, account for her mental limitations, which require a "function by function" assessment, and the ALJ failed to incorporate his own finding that Plaintiff suffered from moderate limitations in the area of concentration, persistence or pace, pursuant to Eleventh Circuit's holdings.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the limitations described as part of the "paragraph B criteria" must be translated into a detailed assessment and limitation in the RFC finding which the ALJ acknowledged

-5-

in his decision. R. 16 (citing SSR 96-8p (stating that the limitations identified in connection with an ALJ's finding whether a claimant's condition meets or equals a listed impairment (the "paragraph B criteria") "are not a residual functional capacity assessment … The (mental RFC) used at steps 4 and 5…requires a more detailed assessment"); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A) ("An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders."). Plaintiff contends that, with respect to the paragraph B criteria, the current regulations do not define the term "moderate"; however, the Agency did in fact define this term when it proposed changes to the evaluation process used in mental impairment cases in 1991, and the term "moderate" as it applies to concentration and task persistence as "frequently may not be able to complete complex tasks without assistance or direction, and occasionally unable to complete simple tasks." SSA Proposed Rules, Mental Disorders in Adults, 56 Fed. Reg. 33130, 33132 (July 18, 1991). Plaintiff further contends that the ALJ erred in failing to include, implicitly or explicitly, his assessed limitations in the area of concentration and task persistence in his RFC and did not do so in his generic, conclusory finding that Plaintiff could perform "1-2 step tasks" with certain social functioning limitations.

Plaintiff cites *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011) for the proposition that an ALJ's hypothetical question that restricted the VE's inquiry to simple, routine tasks or unskilled work did not adequately account for a limitation in maintaining concentration, persistence and pace. *See also Richter v. Commissioner of Social Sec.*, 379 Fed.Appx. 959, 960-62 (11th Cir. 2010) (limiting hypothetical to unskilled jobs and referencing Plaintiff's moderate limitation in the ability to remember, understand, and carry out detailed instructions does not account for deficiencies in concentration, persistence, or pace). In *Jarrett v. Commissioner of Social Security*, the Eleventh Circuit discussed *Winschel* and stated that a hypothetical question could sufficiently

account for such an impairment by including a restriction to simple or routine tasks if the medical evidence demonstrated that the claimant had the ability to perform those tasks despite limitation in concentration, persistence or pace. 422 Fed. Appx. 869, 872 n. 1 (11th Cir. 2011) (unpublished).

The Commissioner contends that the ALJ is not required to use the phrase "moderate limitation in maintaining concentration, persistence, and pace" in the hypothetical question, and, in this case, he properly crafted a mental RFC that accommodated Plaintiff's moderate impairments in concentration, persistence, and pace by limiting Plaintiff to "simple one-to-two step instructions, to a low stress work environment, and to no assembly lines or production quotas." R. 16, 17, 60-61. The Commissioner argues that such a restriction complies with the Eleventh Circuit's holdings in *Winschel*, 631 F.3d at 1181, and *Jarrett*, 422 F. App'x at 872. The Commissioner points to the "supporting evidence" in this case as the ALJ's explanation that despite his finding that Plaintiff had moderate limitations in concentration, persistence, and pace, the evidence showed Plaintiff used the computer, read, paid bills, and used a checkbook (R. 17, 217) and Plaintiff's testimony that she performed work activity as a notary trainer during her claimed period of disability (R. 14, 40-41). The Commissioner argues that this is sufficient evidence showing that Plaintiff could work despite any difficulties in concentration, persistence, and pace.

Generally, case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Pendley*, 767 F.2d at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Hypothetical questions may adequately accounted for a

claimant's deficiencies in concentration, persistence, and pace as long as they otherwise implicitly accounted for these deficiencies.

The Commissioner misapplies the reasoning of *Jarrett,* which stated that "[a]n ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence[,] and pace where the *medical evidence* demonstrates that the claimant retains the ability to perform the tasks despite concentration difficulties." 422 F. App'x at 872 (emphasis added). As the court specifically pointed out in *Richter v. Commissioner of Social Security*, other courts have found that a *medical doctor's* opinion that a claimant could perform simple and routine tasks despite a limitation in concentration, persistence, and pace, would adequately account for such mental limitations:

> [W]here medical evidence demonstrates that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence, and pace, our sister circuits have found that these restrictions sufficiently account for such deficiencies. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (hypothetical adequately accounted for limitations in concentration, persistence, or pace where it restricted vocational expert's inquiry to unskilled sedentary-level work, and claimant's concentration limitations stemmed solely from chronic back pain not aggravated by sedentary work); *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174–76 (9th Cir. 2008) (restricting vocational expert's inquiry to simple, routine, repetitive tasks accounted for deficiencies where physician testified that despite claimant's slow pace, she could still "carry out simple tasks"); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (restricting vocational expert's inquiry to simple, routine, repetitive tasks accounted for deficiencies of concentration, persistence, or pace where psychologist determined that claimant could perform such tasks without severe restrictions). Additionally, our sister circuits have held that hypothetical questions adequately account for a claimant's deficiencies in concentration, persistence, and pace where they otherwise implicitly account for these deficiencies. *See White v. Commissioner of Social Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (hypothetical adequately accounted for limitations in concentration, persistence, or pace where ALJ referenced claimant's inability to maintain attention and concentration); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.2002) (failure to expressly recite limitations in concentration, persistence, or pace did not require remand where ALJ specifically directed vocational expert to credit testimony of doctor testifying to such deficiencies).

379 Fed. Appx. 959, 961, 2010 WL 2017650 (11th Cir. May 21, 2010)[1].

However, the ALJ's approach here is no different than the identical situation in *Winschel*, where the administrative law judge's hypothetical question that restricted the vocational expert's inquiry to "simple, routine tasks or unskilled work" did not rely on any particular medical evidence or testimony of a doctor when accounting for a limitation in maintaining concentration, persistence and pace. *Winschel*, 631 F.3d at 1181. The ALJ's limitation in this case was slightly more elaborate – "simple one-to-two step instructions, to a low stress work environment, and to no assembly lines or production quotas," but it was erroneous because it was not based on any actual "medical evidence" demonstrating that she retained the ability to perform the tasks despite concentration difficulties," as was present in *Jarrett*. Accordingly, the ALJ's decision was not based on substantial evidence. On remand the ALJ should propose a hypothetical to the VE that includes moderate limitations in concentration, persistence, and pace. Also on remand the ALJ will clarify, and if appropriate, question the VE about jobs at the appropriate reasoning level[2], given Plaintiff's mental limitations.

### *B. Mental health records*

There are almost no mental health treatment records in the Administrative Record; however, it is undisputed that Plaintiff did receive counseling from 2005 to 2010 from Judy Shell, Ph.D., who is a licensed medical and family therapist as well as a registered nurse (according to letterhead). R. 559, 1160-67. The two state agency physicians who completed Psychiatric Review Techniques (on December 3, 2010 and March 8, 2011), both noted they had "insufficient evidence to make a determination" as of the date last insured, March 2009 because there were "no mental status exams noted in file." R. 1141-53, 1236. Dr. Shell's single "Psychiatric/Psychological Impairment

---

[1] Unpublished opinions of the Eleventh Circuit, constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

[2] Because the case is being remanded, the Court need not reach Plaintiff's argument regarding the General Educational Development levels or reasoning levels used in assessing the complexity of instructions and tasks required of jobs.

Questionnaire," dated October 14, 2010, is the only opinion in the Administrative Record touching on Plaintiff's mental limitations; she also prepared a letter to the SSA about Plaintiff's treatment in January 16, 2008. Unfortunately, Dr. Shell's notes from individual treatment are not in the Record.

Dr. Shell completed a medical source statement wherein she advised that Plaintiff exhibits persistent symptoms of poor memory, difficulty thinking or concentrating, time and/or place disorientation, decreased energy, generalized persistent anxiety, hostility, sleep and mood disturbance, lack of interest in pleasurable activities, and irritability as a result of recurrent major depressive disorder. R. 1160-61. Clinically, Dr. Shell observed anxiety, nervousness, worry, anger and irritability, and concentration and memory deficits. R. 1162. She assessed a guarded prognosis for improvement and cautioned that Plaintiff's psychiatric condition exacerbates her symptoms of fibromyalgia. R. 1160, 1166. Dr. Shell anticipated that Plaintiff will be absent from work more than three days per month due to her mental impairments. R. 1167. She opined that Plaintiff has a markedly limited ability to understand, remember, and carry out detailed instructions. R. 1163. Dr. Shell noted that Plaintiff experiences episodes of deterioration or decompensation in work or work-like settings which cause her to withdraw from that situation and/or experience exacerbation of signs or symptoms. R. 1165. She further described a number of moderately limited abilities in the following work-related areas of functioning: understand and remember one or two step instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace with an unreasonable number and length of rest periods; travel to unfamiliar places or use public transportation. R. 1165. Dr. Shell, who has treated Plaintiff on a biweekly basis since 2004, opined that these symptoms and limitations began in 2006. R. 559,1167.

Plaintiff argues that the ALJ erred in finding that "no records at all" were submitted in support of Dr. Shell's opinion because, although there are no notes from treatment sessions from Dr. Shell, she did submit a "treatment summary" for SSA dated January 16, 2008 stating that she had seen Plaintiff since April 12, 2005 for "extreme depression and stress related issues." R. 559. The letter stated:

> Presently her diagnosis is Major Depressive Disorder, Recurrent; DSM-IV-TR 296.31, and she reports "not feeling happy and depressed" on and off for the past 8 years. She is currently taking Wellbutrin 300 mgm per day for her depression and Xanax .25 mgm prn for anxiety. These medications help her "not feel so devastated all the time." Ms. Adams also has chronic illnesses (diabetes and fibromyalgia) and complains of cluster migraine headaches.
>
> I do not do any type of medical testing however I do have her responses to the Zung Depression Scale and another assessment form, both from 2005 and today, which advises me of her present concerns. (See enclosed) Although she had previously reported (2005) that she had "thoughts that life was not worth living and thoughts about hurting herself", she denied any suicidal ideation and had no plan to harm herself at that time. However, since the assessment form which she completed on 1-16-08 did report that she "had thoughts about hurting herself" which she considered a moderate problem, I requested that she go to her primary doctor on 1-17-08 and speak with her about possibly changing her medication and to ascertain whether or not it was necessary to hospitalize Ms. Adams at that time. The doctor did not think it was necessary to hospitalize her or change her medication. Ms Adams will be seeing me again next week and I will reevaluate the situation at that time.
>
> In 2007, we had been working on reducing the major symptoms of her depression as well as stress management and boundary training by using some solution focused techniques and cognitive restructuring. This treatment went well and she decided to return to see me on an as needed basis. However, in the past 2 months Elizabeth has had some major traumas which have caused increased stress and the return of her panic attacks. Her sister went into premature labor and delivered a child less than 2 pounds. Then her husband had a major heart attack and was hospitalized with stint placement and he is to have another stint placed this month. She also learned that her eldest daughter is pregnant and this woman has no resources except her parents and grandparents and Elizabeth sees herself as taking on some major responsibility in the near future.
>
> Now that she has returned to therapy; I will continue with solution focused and cognitive restructuring therapy along with management of her panic attacks. While it is my hope that Ms. Adams will progress and become more stable, it is my opinion that she is definitely unable to hold a steady job working 40 hours per week at this time, as she has again been overwhelmed with family health issues along with her own chronic health issues. Recently, she has also complained about memory loss and her

-11-

> PCP has ordered an MRI to ascertain what is responsible for these symptoms. If you have questions or concerns regarding this information, please feel free to contact me . . . and I will be able to elaborate as necessary.

R. 559-60.

Plaintiff argues that the ALJ failed to incorporate the mental limitations opined in Dr. Shell's assessment; instead the ALJ opined Plaintiff had the mental RFC for "simple 1-2 step tasks that are 'low stress'" (defined as no assembly lines or production quotas) (R. 17) even though Dr. Shell's assessment described significant limitation of Plaintiff's ability to perform 1-2 step tasks, and questioned her ability to maintain a full work week and concentration and persistence over extended periods of time. The ALJ did not address Dr. Shell's limitations, Plaintiff argues, expressly or implicitly, in his mental RFC, and this failure to assign appropriate weight to the opinion of Dr. Shell is also erroneous in that he failed to appropriately address all of Plaintiff's documented limitations.

In *Winschel*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178–79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)). "Generally, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *Baker v. Astrue*, 2011 WL 899311, *7 (M.D. Fla. Mar. 14, 2011) (citing *McNamee v. Soc. Sec. Admin.*, 162 F. Appx. 919, 923 (11th Cir. Jan. 31, 2006) (unpublished); 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5).

In this case, Dr. Shell acknowledged that she was not a medical doctor, and she explained that on the form. R. 1161 ("I am not a physician and do not order tests."). However, under the SSA

-12-

regulations, the term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." *See* 20 C.F.R. 404. 1502 and 416.902. In addition to licensed physicians, "acceptable medical sources" include "licensed or certified psychologists" and only "acceptable medical sources" can give medical opinions which may be entitled to controlling weight. 20 C.F.R. §§ 404.1513(a) and 416.913(a); 20 C.F.R. 404.1527 and 416.927. Evidence from "other sources," as defined in 20 C.F.R. § 404.1513(d) and 416.913(d), may be used because they show the severity of the individual's impairments and how they affect the individual's ability to function. These "other sources" include medical sources who are not qualified as "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers and therapists. Information from these "other sources" cannot establish the existence of a medically determinable impairment because there must still be evidence from an "acceptable medical source" for this purpose; however, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairments and how it affects the individual's ability to function.

In this case, the ALJ noted Dr. Shell's 2010 opinion, and that she was a licensed marriage and family therapist. Dr. Shell's curriculum vitae (from the Osceola Cancer Center website[3]) indicates that she has a Ph.D. in Marriage and Family Therapy and not psychology, as Plaintiff contends. Based on her training and licensure, Dr. Shell qualifies as an "other source" of information about the severity of Plaintiff's mental impairments that the ALJ is required to consider, but her opinion does not have to be given "controlling weight."

The ALJ noted there was some mention in the medical records of pre-DLI treatment for "anxiety" from Plaintiff's primary care doctor (R. 19), and prescriptions for Wellbutrin. R. 19. However, he did not consider this evidence at any length and, in fact, found to the contrary that the

---

[3]*See* www.osceolacancercenter.com/pdf/cv_shell.pdf.

-13-

primary care records showed "few mental status abnormalities." R. 16. The Commissioner concedes there are references in the records of the primary care doctors, but argues these are simply "intermittent references to depression or anxiety, her subjective complaints, and her prescription medications."

While the ALJ did discuss Dr. Shell's records in some detail, he did not adequately treat them as supported by those from Plaintiff's primary care doctors:

> The claimant testified that she has been treated by Dr. Shell for close to five years, weekly at first and now every three weeks. The claimant denied any hospitalizations for depression. She testified that she took Wellbutrin and Lexapro, hut she had side effects and at some point stopped Wellbutrin. However, primary care records from Dr. Miller indicate discontinuing these medications in the past due to cost, not side effects (6F). The record contains a 2010 medical source statement from a licensed marriage and family therapist, Judith Shell, Ph.D., who indicated she had treated the claimant every two weeks beginning April 2005 for chronic, major depressive disorder (recurrent) ( 43F). Dr. Shell purported to opine on the claimant's functioning dating hack to 2006. She listed symptoms including discouragement, anxiety, worry, irritability, memory and concentration problems, and insomnia, as well as associated clinical findings hut she did not report on specific mental status testing.
>
> Dr. Shell indicated the claimant's lack of energy and mood problems would interfere with work function for long periods, and that she would miss work more than 3 times per month. However, the only specific marked limitations identified by Dr. Shell pertain to understanding, remembering, and carrying out detailed instructions. She also noted the claimant would experience decompensation in a work setting, hut she attributed this to home stressors and physical ailments. Dr. Shell also noted the claimant could tolerate low levels of work stress. Dr. Shell assigned a global assessment of functioning of 60, with 54 being the lowest in the prior year. This denotes moderate limitations at most ( 43F).
>
> Dr. Shell also admitted that she is not a physician and ordered no specific testing[4], and she did not submit any treatment records to substantiate her findings relative to the period of disability at issue here. There is a letter from Dr. Shell dated January 16, 2008, addressing the claimant's history of anxiety and depression, and an instance of possible suicidal ideation, hut the claimant did not require hospitalization or change her medications (Wellbutrin and Xanax) as prescribed by a primary care physician.

---

[4]Plaintiff concedes that no "tests" were apparently performed, and argues that tests are not particularly common or indicated in a mental health setting, and the ALJ failed to identify any test required under the regulations or in common psychological treatment settings that he was thinking of when he made this observation. The Court agrees that the ALJ did not identify any particular test – not performed – that would have carried weight in this instance. Moreover, Dr. Shell did describe clinical findings to support a mental impairment, including anxiety, nervousness, worry, anger and irritability, concentration and memory deficits including poor memory, mood disturbance, and time or place disorientation. R. 1162.

> See also l7F. Dr. Shell further reported that the claimant had improved to being seen on only an as-needed basis until some life stressors occurred at the end of 2007, early 2008, including her daughter's pregnancy and her husband's heart problems. Dr. Shell stated that she would reinstate therapy but at that point, the claimant was unable to hold a 40-hour per week job due to being overwhelmed by health issues and the family issues (16F).
>
> I note that there are no corroborating treatment notes from Dr. Shell and no evidence of specialized care by a psychiatrist. The primary care records show medications prescribed for anxiety and depression, but generally there are few mental status abnormalities documented. There is also evidence in the record of the claimant's engagement in a wide range of activities, which does not support a finding of total disability from a mental standpoint. For all these reasons, to the extent Dr. Shell has opined that the claimant would experience mental symptoms so disruptive that she could not maintain a job, I afford little weight to her opinions. I do afford some weight to the portion of Dr. Shell's opinions suggesting moderate functional limitations, as this finds some support in the longitudinal record, with regard to handling stress and detailed instructions.

R. 15-16.

After considering this evidence, the ALJ determined Plaintiff had mild restrictions in activities of daily living, social functioning, and no episodes of decompensation. R. 16-17. The ALJ found Plaintiff had moderate difficulties in concentration, persistence, or pace, based on her alleged memory and concentration problems, noting she loses her train of thought and needs notes as reminders, but she had also admitted to using the computer, reading, paying bills, and using a checkbook. R. 17.

As Plaintiff points out, her primary care doctor's records confirm the presence of symptoms and diagnosis and treatment for depression and anxiety before the DLI. On January 14, 2005, Plaintiff presented to Dr. Miller with complaints of depression and anxiety that had improved with Wellbutrin and Lexapro. R.444. However, she reported a "very bad" Christmas with some suicidal thoughts, as well as decreased energy level and weight gain. R. 444-45. She displayed a moderately depressed affect; Dr. Miller diagnosed her with depression and anxiety and referred her to a psychiatrist. R. 446. On February 17, 2006, Plaintiff began treating with Dr. Trevett and reported facial and left arm tingling three times per day, which Dr. Trevett attributed to anxiety. R. 481-83. During a February 28, 2006 follow up appointment, Plaintiff reported persistent worry, tingling in her hands and feet,

-15-

stomach discomfort, and hot/cold flashes due to anxiety. R. 478-79. Dr. Trevett prescribed BuSpar and Xanax, and consultation with a psychiatrist or psychologist. R. 480. On December 28, 2007, Plaintiff reported memory loss, and on January 28, 2008, she returned with complaints of chronic depression associated with pessimism about the future or brooding about the past; exhibiting a depressed mood; she was referred to Dr. Jacobs. R. 608-11, 616. Dr. Trevett noted Plaintiff's depression was accompanied by a persistent worry, and loss of pleasure. R. 613.

The ALJ's lack of any meaningful discussion of Plaintiff's pre-DLI treatment for depression and anxiety was erroneous and compounded his failure to credit Dr. Shell as an "other source." As Plaintiff points out, the ALJ did not identify the lack of treatment notes from Dr. Shell as an issue during the hearing even though he questioned Plaintiff at length on the nature and duration of her treating relationship with Dr. Shell. R. 49-50. The Commissioner argues that the ALJ's position was correct in that Dr. Shell failed to submit her treatment records to substantiate her findings relative to the period of disability at issue.

Plaintiff argues that pursuant to SSA Regulations, it was the ALJ's duty to either attempt to obtain the evidence or to inform Plaintiff's representative of the responsibility to obtain and submit the records. 20 C.F.R.§ 404.1512(d). She argues an ALJ may not "lay in the weeds" and ultimately rely upon a lack of specific medical records as a basis to deny benefits when that lack could have been corrected by obtaining or requesting the representative to obtain them. Generally, the ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). The Commissioner contends that the ALJ did fully and fairly develop the record and requested the medical records from Osceola Cancer Center "but only received Dr. Shell's summary letter and questionnaire." However, both of those documents were specifically written to the SSA, and did not appear to be in response to an agency records request for the period 2005 to 2010. Because the case is being remanded for the ALJ's failure to include Plaintiff's lack of moderate limitations in

-16-

concentration, persistence, and pace, on remand the ALJ will also obtain the treatment notes (if any) from Dr. Shell, at Osceola Cancer Center, from 2005 to 2010.

## IV.  CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 6, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record